

**FAXON BOWEN**
MAYOR

**PHYLLIS DAVIS**
SECRETARY

CITY OF NORTH ADAMS
MASSACHUSETTS
OFFICE OF THE MAYOR

May 28, 1942

To the Honorable City Council

Gentlemen:

    I respectfully suggest the acceptance of Hawthorne Avenue, Chantilly Avenue, Catherine Street, Bonair Avenue, Watson Street and Versailles Avenue as public streets.

    It appears that the city will have a considerable increase in unemployment this early fall and to save the expense in the Welfare Department we must have some W. P. A. work which is acceptable to the proper authorities. The Federal Government has cooperated fully in the trade school matter through the W. P. A. and will continue to do so as long as we have large numbers of unemployed here. We must, on our part, submit such projects as meet with the government's approval.

    Sewer lines up these streets and street improvements for the benefit of defense workers who live there will be accepted. The city can pay its Sponsor's Contribution with equipment work and the city benefits by the improvements and by the saving in expenses in the Welfare Department.

    I also recommend for your early consideration the fact that this rail removal job will use $7,000. or $8,000. of our Sponsor's Contribution.

    The returns for the sale of the rails which it appears now will fully reimburse this fund, must, however go into the general receipt of the city and can not be used without reappropriation by the council.

    Respectfully submitted,

    Faxon Bowen

FB:davis

    *Faxon Bowen*

    Mayor



# City of North Adams

## In City Council

.....October 6, 1942..............

The Standing Committee on    Streets                to which was referred the Mayor's communication relative to the acceptance of Hawthorne Avenue, Chantilly Avenue, Catherine Street, Bonair Avenue, Watson Street and Versailles Avenue as public streets,

having considered the same, reports that all the abutters have not signed releases on any one street in the Lorraine Tract and, inasmuch as the city ordinance requires releases from all abutters before a street may be accepted as a public way, we recommend that no action be taken this year with the understanding that the City Engineer will bring the matter before the Council when all the releases are signed on any one street.

                              Respectfully submitted,

                              Daniel R Horn
                              Ernest L Cyr

If all lots meet one of the following criteria, the plan is not a subdivision and approval under the subdivision control law is not required, but rather requires only a simple endorsement that it is not a subdivision. Please indicate (circle) the grounds on which you believe your plan not to be a subdivision (either A, B or C)

A. Each lot on the plan or altered by it meets one of these criteria:

(1.) Has all the frontage required under zoning on
   (a.) a public way, or
   b. a way shown on a plan approved earlier by the Planning Board under this law, or
   c. a way preexisting the effective date of subdivision regulations, and which the Board finds adequate for its planned use.
2. Has been clearly marked on the plan to be either
   a. joined to and made a part of an adjacent lot, or
   b. not a building lot

B. Each lot on the plan contains a building which existed prior to the effective date of the North Adams Zoning Ordinances.

C. The plan simply describes already existing parcels with no new lot divisions.

_Charles Dulabeau_
Signature of Owner

_13 Orchard TR_
Address
_North Adams MA 01247_

_Charles Dulabeau_
Signature of Applicant

_13 Orchard TR_
Address
_North Adams MA 01247_

Finding of the Planning Board _[signatures]_
Plan endorsed by _[signatures]_

for the Planning Board on _October 16_, _2003_.
Notice of action sent to City Clerk on _Oct 17_, _2003_.

OR

Plan found to require approval as a Subdivision. Notice of finding mailed to applicant and City Clerk on _____,
1988.

North Adams Planning Board

_____, Chairman



# Deep Associates
# 1 Post Office Square
# North Adams, MA 01247
# 413-664-1053 phone
# 413-664-1057 fax

October 29, 2003

Attorney Fred Thompson

Dear Attorney Thompson,

    I would like to recap with you my efforts to obtain a building permit for a lot I own on Bonair Avenue in the City of North Adams.

5/15/03 – I met with North Adams Building Inspector Vincent Lively to find out the requirements to obtain a building permit. I showed him a diagram of the lot and he informed me I would need to show him plans of the home.

5/19/03 – I gave inspector Lively a copy of the plans for the home, which he still has. After review by his office, he required me to have the plans stamped and an approval letter by a licensed Massachusetts State Registered Professional Engineer, prior to issuance of a building permit.

5/26/03 – Inspector Lively informed me that in addition to the requirements given me on 5/19/03, I would further have to satisfy the requirements of Leo Senecal, Road crew foreman, and build a new road 75 feet long, and have the local Conservation Commission determine if the site is a wetland.

6/4/03 - Mr. Lively went to Lee to personally inspect the home.

6/4/03 – I met with Laura Cece and Paul Gigliotti of the North Adams Conservation Commission at the site. Mr. Gigliotti, as is normal practice of the Conservation Commission, ruled that the site has an intermittent stream nearby, but no meeting in front of the board would be required to build on the site.

6/5/03 – I presented Inspector Lively with a letter from SK Design Group, Inc., a licensed Massachusetts State Registered Professional Engineer, ensuring compliance with the Massachusetts State Building Code (780 CMR-Sixth Edition).

6/9/03 - Based on the 6/3/03 letter from SK Design Group, Inc., inspector Lively further required a foundation plan, a site plan and another letter from SK Design Group,

16.1

R-2 zone 75' Front requirment
27L - Public Way (street)
ADMistering - Arbitrarilly

Inc. based on a statement "considered to be the Minimum information for **ALL permit applications** ".

6/13/03 – I met with Leo Senecal to view the site as per Vin Liveley requirement. Mr. Senecal said my engineer must give him a detail of the gravel to be made the roadbed and it must meet all city requirements and must extend 75 feet.

6/27/03 – Mr. Senecal informed me that this issue must be handled by Katerine Eade, deal with her!

6/27/03 – I went to see Katherine Eade, who informed me she was a perfectly good intermediary between all adversaries of the Mayor. She would meet with me on Monday morning July 1 at 9 A.M.

7/1/03 – After bringing Ms. Eade up to date on my request for a building permit, she said she would get back to me. I pointed out that the **exact** same situation occurred in 2002 for a Mr. David Emery on 80 Bryant Street, and he was given a building permit without any hassle.

7/8/03 – I telephoned Ms. Eade who said to stop bothering her every 5 minutes!

7/2/03 – I presented Inspector Lively with the foundation plan designed specifically for this site drawn by Superior Walls of the Hudson Valley, Inc.

7/10/03 – Inspector Lively informed me that he would not issue a building permit because the Mayor does not want any homes on this site, unless I am willing to build a road all the way to Route 2, over 1000 feet.

7/11/03 – I hired Attorney Fred Thompson to find out why I can't get a building permit.

7/14/03 – I Telephoned Katherine Eade, who said she was getting an opinion from the city solicitor as to the legality of building on Bonair Ave. She said he would answer within one week.

7/23/03 – I telephoned Ms. Eade again regarding the opinion from the solicitor. No call back.

8/1/03 – spoke to city solicitor
8/6/03 – saw city solicitor
8/8/03 – called city solicitor
8/11/03 – paid building inspector

Sincerely,

Mike Deep

heading



# The City of
# North Adams, Massachusetts

*Building Department*
(413) 662-3014

October 28, 2003

Mr. Michael Deep
1 Post Office Square
North Adams, MA  01247

RE:  residential violation

Dear Mr. Deep:

### Notice of Violation

Upon receiving several complaints from the residents in the Loftus Street area, a site visit was made by this office and the following zoning violations were noted.
1. The storage of a premanufactured home is not allowed in R-3 zone.
2. The storage of building materials is not allowed in an R-3 zone.
3. The parking of a vehicle that is rated over one ton is not allowed in an R-3 zone.

You are hereby ordered to remove these violations within 48 hours of your receipt of this notice.  Contact this office for a re-inspection upon the completion of your abating of these violations.

In accordance with Section 29-2, Non-Criminal Disposition, whoever violates the provisions of the zoning ordinances of the City of North Adams will be subject to the following:
1. First offense; written warning.
2. Subsequent offenses of $100.00 each offense.  Each day the violation exists shall be deemed to be a separate offense.

Please contact me at 413-662-3014 if you have any questions concerning this matter.

Sincerely,

William Meranti
Local Building Inspector

Sec. 5

5.1.9 Parks and playgrounds operated by governmental units or nonprofit corporations. (Ord. of 6-27-78, § III(7))

5.1.10 Hospitals, sanitariums and similar charitable or philanthropic institutions operated by governmental units or nonprofit corporations, but excluding a correctional institution or institution for the insane. (Ord. of 6-27-78, § III(7))

5.1.11 Nursery schools and day care facilities upon issuance of a special permit from the planning board. (Ord. of 8-14-90, § 6)

5.1.12 A private sanitarium, rest home, shelters for the homeless or nursing home, upon issuance of a special permit from the planning board and subject to the provisions of Section 3.13. Space in a private garage may be used for the storage of commercial vehicles of not more than one-ton capacity and may be rented to persons not residents on the premises. (Ord. of 6-27-78, §§ II(3), III(7); Ord. of 8-14-90, § 9)

5.1.13 Accessory uses customarily incidental to a permitted use on the same premises. Accessory buildings may be used for residential purposes in accordance with the provisions of Section 3.11. (Ord. of 6-27-78, § III(7); Ord. of 8-14-90, § 7)

5.1.14 Permitted sign(s) as regulated in Section 14.2 of this ordinance. (Ord. of 5-8-79; Ord. of 8-14-90, § 10)

5.1.15 Duly incorporated fraternities or sororities owning and occupying a dwelling maintained exclusively for members affiliated with an academic or professional college or other recognized institution of higher learning, with a special permit from the zoning board of appeals subject to the following special requirements:

(a) Off-street parking facilities shall be provided in accordance with Section 10 of this ordinance.

(b) Parking and outdoor activity areas located within forty (40) feet from any property line shall be screened so as not to be visible from adjacent lots in residential use.

(c) Outdoor lighting shall be so shielded as to cast direct light upon adjacent property or public ways, and where outdoor lighting is provided activities after normal daylight hours, such lighting shall be extinguished not later than 11:00 p.m.

(d) A sound amplification system shall not be permitted except where such system is inaudible at any property line.

(e) The planning board may recommend and the zoning board of appeals may impose additional requirements as in its judgment are necessary for the protection of the public health, safety and welfare.

(f) No permit shall be issued by the zoning board of appeals, unless and until the department of public health of the City of North Adams has approved those aspects of the proposed use which concern scientific research and development or related production under its jurisdiction. (3-13-73; Ord. of 6-27-78, II(4)—(6), III(7); Ord. of 8-14-90, § 11)

5.1.16 Any accessory use to a by-right use, whether or not on the same parcel, which is necessary in connection with scientific research and development or related production may be authorized by special permit from the zoning board of appeals, provided the board finds that the proposed accessory use does not substantially derogate from the public good. (Ord. of 6-27-78, § III(8); Ord. of 8-14-90, § 12)

5.1.17 Bed and breakfasts as defined in Section 1. (Ord. of 7-26-88; Ord. of 8-14-90, § 13)

5.2 Required lot area, width, frontage, yards, coverage, height.

| District | Min. Lot Area sq. ft. | Min. Lot Width ft. | Min. Lot Frontage ft. | Min. Dwelling Area sq. |
|---|---|---|---|---|
| R-1 | 16,000 | 90 | 90 | 8, |
| R-1A | 24,000 | 120 | 120 | 24, |
| R-2 | 11,250 | 75 | 75 | 5, |
| R-3 | 7,200 | 60 | 60 | 3, |

# Deep Associates
# 1 Post Office Square
# North Adams, MA 01247
# 413-664-1053 phone
# 413-664-1057 fax

October 30, 2003

William Meranti, Local Building Inspector
City of North Adams
North Adams, MA 01247

VIA FAX

Dear Mr. Meranti,

Thank you for your letter yesterday titled <u>Notice of Violation</u>. There are no violations on any land I own in the Loftus Street area.
If you are concerned about a pre-manufactured home that I have temporarily stored on my property, that will be moved as soon as I receive a building permit from the City of North Adams for property I own on Bonair Avenue, North Adams.

You should know that I applied for a building permit for Bonair Avenue on May 15, 2003 from then building Inspector Vincent Lively. Mr. Lively was co-operative and gave me a list of requirements. I showed him a diagram of the lot and he informed me I would need to show him plans of the home. On 5/19/03 I gave inspector Lively a copy of the plans for the home, which he still has. After review by his office, he required me to have the plans stamped and an approval letter from a licensed Massachusetts State Registered Professional Engineer, prior to issuance of a building permit. On 5/26/03 Inspector Lively informed me that in addition to the requirements given me on 5/19/03, I would further have to satisfy the requirements of Leo Senecal, Road crew foreman, and build a new road 75 feet long, and have the local Conservation Commission determine if the site is a wetland. On 6/4/03 Mr. Lively went to Lee to personally inspect the home I

planned to build. On 6/4/03 I met with Laura Cece and Paul Gigliotti of the North Adams Conservation Commission at the Bonair Avenue site. Mr. Gigliotti, as is normal practice of the Conservation Commission, ruled that the site has an intermittent stream nearby, but no meeting in front of the board would be required to build on the site.

On 6/5/03 I presented Inspector Lively with a letter from SK Design Group, Inc., a licensed Massachusetts State Registered Professional Engineer, ensuring compliance with the Massachusetts State Building Code (780 CMR-Sixth Edition), just as he required. On 6/9/03 based on the 6/3/03 letter from SK Design Group, Inc., inspector Lively further required a foundation plan, a site plan and another letter from SK Design Group, Inc. based on a statement "considered to be the Minimum information for **ALL** permit applications ".

As requested by Inspector Lively, on 6/13/03 I met with Leo Senecal to view the site as per the Vincent Liveley requirement. Mr. Senecal said my engineer must give him a detail of the gravel roadbed and it must meet all city requirements and must extend 75 feet. I agreed to this, however on 6/27/03, Mr. Senecal informed me that this issue must be handled by Katerine Eade, deal with her!

On 6/27/03 I went to see Katherine Eade, who informed me she was a perfectly good intermediary between all adversaries of the Mayor. She would meet with me on Monday morning July 1 at 9 A.M.

On 7/1/03 after bringing Ms. Eade up to date on my request for a building permit, she said she would get back to me. I pointed out that the exact same situation occurred in 2000 for a Mr. David Emery on 80 Bryant Street, and he was given a building permit without any hassle. On 7/8/03 I telephoned Ms. Eade who said to stop bothering her every 5 minutes!

On 7/2/03 I presented Inspector Lively with the foundation plan he required designed specifically for this site drawn by Superior Walls of the Hudson Valley, Inc. On 7/10/03 Inspector Lively informed me that he would not issue a building permit because the Mayor does not want any homes on this site, unless I am willing to build a road all the way to Route 2, over 1000 feet.

On 7/11/03 I hired Attorney Fred Thompson to find out why I can't get a building permit. On 7/14/03 I again telephoned Katherine Eade, who said she was getting an opinion from the city solicitor as to the legality of building on Bonair Ave. She said he would answer within one week.

On 7/23/03 I telephoned Ms. Eade again regarding the opinion from the solicitor. No call back. On 8/1/03 I personally spoke to the city solicitor. On 8/6/03 I saw the city solicitor. On 8/8/03 I called the city solicitor. At all times the City Solicitor was a gentleman and said he would try to resolve the issue.

On 8/11/03 I paid building inspector Lively $378 for the building permit and gave him a letter (copy attached). I informed him that if I was not given a building permit, I would pursue legal action. On 8/12/03, Katherine Eade informed me my request must go in front of the Planning Board on Sept. 8, 2003, but that the city would co-operate with me. I met with Inspector Lively, he asked me to write a narrative to give to the Planning Board on Sept. 8, and everything should be fine.

Just before the meeting of September 8, 2003, Ms. Eade telephoned me to say that the deed I had given to the building inspector was not acceptable since it was not signed. She asked me to have my attorney draw a new deed and then we could attend the next meeting of the Planning Board, October 6, 2003. Reluctantly, I agreed to have a new deed drawn. In the interim however, in an effort to move things along, I could pay $75 and go to the Conservation commission to formally approve what was previously approved by Mr. Alan Gigliotti on 6/4/03. Again, I agreed to pay the $75 and appear in front of the Conservation Commission, where again it was unanimously approved with conditions.

The Friday before the October 6 meeting of the Planning Board, Ms. Eade telephoned me with yet another requirement. I was told that it was my job to prove to her that the City had the authority to grant me the right to build a road. I **must** have my attorney write a legal opinion. I asked her if this requirement was given to everyone, or was I being singled out because of my political differences with the Mayor. She said mistakes were made in the past, but from now on, the city is doing things right. I would be on the agenda of the Planning Board on November 3, 2003, if I had the opinion to her and if the city solicitor said it was acceptable.

My attorney, Fred T. Thompson, issued a legal opinion on October 23, 2003, after a meeting with Assistant Solicitor Tom Manuel, myself, Katherine Eade and Vincent Lively. Attorney Thompson made it quite clear that the city does have the authority to grant me the right to build a road and issue a building permit.

Should the planning board vote in favor of my plan, I shall move the pre-manufactured home that I have temporarily stored on my property as soon as I build the road and pour the foundation. Again, the home is not in violation of any law where it is stored. It is out of the way of traffic, it is not a hazard and it is not a nuisance.

                          Sincerely,

                          Michael A. Deep

Lhead





**SITE PLAN**
1" = 30'



## LOCUS PLAN
### N.T.S.

### ZONING DISTRICT

LOT 49, 50, & 51
R-2: SINGLE FAMILY

| REQUIRED | | | AVAILABLE |
|---|---|---|---|
| -MINIMUM LOT AREA | = | 11,250 sf | 11,780 sf± |
| -MINIMUM LOT FRONTAGE | = | 75 ft | 150 ft± |
| -MINIMUM FRONT SETBACK | = | 20 ft | 22 ft± |
| -MINIMUM SIDE SETBACK | = | 10 ft | 17 ft± |
| -MINIMUM REAR SETBACK | = | 15 ft | 42 ft± |
| -MAXIMUM BUILDING HEIGHT | = | 30 ft | 21 ft± |
| -MAXIMUM BUILDING COVERAGE | = | 25 % | 14 %± |

PROPOSED GRAVEL ACCESS DRIVE WITH TURNAROUND



**CK Design Group, Inc.**
Civil Engineers • Surveyors • Consultants

**BUILDING INSPECTOR PLOT PLAN**
PREPARED FOR
**DEEP ASSOCIATES**
BONAIR AVENUE
NORTH ADAMS          MASSACHUSETTS

SITE PLAN

DATE: JULY, 2003
SCALE: 1" = 30'
PROJECT NO. 030135
DRAWN BY: JAR
DESIGNED BY: JAR
APPROVED BY: JMS

DWG. NO. 1 OF 1

# Narrative

Sept. 23, 2003

It is my intention to build a 2 bedroom, 2 bathroom single family home consisting of approximately 893 square feet with a two car attached garage sitting on a building lot slightly less than 150 feet frontage by 100 feet deep on a city street. It is my intention to build a gravel road 75 feet long by 28 feet wide consisting of a uniform mixture of sand and stone 12 to 18 inches thick, as per guidelines established by the City of North Adams, for safe access by the fire department.

On or before July 1, 2004, I will install a 3 inch layer of bituminous concrete over the existing gravel roadway.

The garage will be set back a minimum of 40 feet from the City flood control. Erosion control measures will be taken along the flood control by using haybales, stakes and a slit fence prior to construction, as is required by the North Adams Conservation Commission.

Project engineer is SK Design from Pittsfield, MA.

_____
Michael A. Deep

heading

# Deep Associates
# 1 Post Office Square
# North Adams, MA 01247
# 413-664-1053 phone
# 413-664-1057 fax

September 23, 2003

Mr. Vincent Lively
North Adams Building Inspector
10 Main Street
North Adams, MA 01247

Dear Mr. Lively,

    Enclosed is a building permit application dated 7/11/03 for a building lot I own on Bonair Avenue. Also enclosed is Berkshire Mountain Homes check number 652 in the amount of $378, which is the appropriate fee.
    As per your previous instruction, I have and am willing to follow the direction of Mr. Leo Senecal as to road construction, Ms. Katherine Eade as to legality of building site, Ms. Laura Cece and Mr. Paul Gigliotti as to Conservation Commission and yourself as to building specifications.
    You presently have in your possession the House plans. Included in this packet is the site plan and the foundation plan.
    Should you need any further information, please let me know. Thank you.

Sincerely,

Michael A. Deep

To Vincent Lively   From Leo

This is a list of minimum requirements that should be met for road extensions and development:

1- Water main to be 8" ductile pipe.
2- All shut offs to be capped by service boxes to top of road surface.
3- Minimum of 2 hydrants of 150 PSI to 300 PSI. At least 2 way.
4- All house services of 3/4" inch copper.
5- All water mains and services and meters to be compatible to existing type throughout city.
6- Storm drain main minimum size of 12 inch. Then connected to various amount of catch basins by 8 inch lateral pipes.
7- Domestic sewer main minimum size of 8 inch. Manholes placed in increment of 1@ 250 ft.
   All manholes + catch basins shall meet Mass. standards.
8- Road construction + Road surface. Gravel to consist of a uniform mixture of stones with a mixture of sand and fines for subsurface, approximately 1 foot depth to base 18". Road surface to consists of a minimum of 3" inch bituminous concrete.
9- Street lighting to be place on every other street pole.
10- Road size min 28 ft width

75' BLACKTOP



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands

# WPA Form 2 -- Determination of Applicability
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40.

---

## A. General Information

**Important:**
When filling out forms on the computer, use only the tab key to move your cursor - do not use the return key.




From:

City of North Adams
Conservation Commission

To: Applicant

Michael A. Deep
Name

1 Post Office Square
Mailing Address

North Adams     MA     01247
City/Town     State     Zip Code

Property Owner (if different from applicant):

Name

Mailing Address

City/Town     State     Zip Code

1. Title and Date (or Revised Date if applicable) of Final Plans and Other Documents:

   Site Plan     7/03
   Title     Date

   Request for Determination of Applicability, p. 1-4 and narrative     8/29/03
   Title     Date

   Title     Date

2. Date Request Filed:

   8/29/03

---

## B. Determination

Pursuant to the authority of M.G.L. c. 131, § 40, the Conservation Commission considered your Request for Determination of Applicability, with its supporting documentation, and made the following Determination.

Project Description (if applicable):

The project consists of building a single family home consisting of approximately 893 square feet with a two car garage. A gravel road will also be built that will be 75 feet long and 20 feet wide. This will all take place within 50 feet of the City Flood Control.

Project Location:

Bonair Avenue     North Adams
Street Address     City/Town

Map 143-p.49,50,51
Assessors Map/Plat Number     Parcel/Lot Number

SEP 15 2003



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
# WPA Form 2 – Determination of Applicability
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

## B. Determination (cont.)

The following Determination(s) is/are applicable to the proposed site and/or project relative to the Wetlands Protection Act and regulations:

Positive Determination
Note: No work within the jurisdiction of the Wetlands Protection Act may proceed until a final Order of Conditions (issued following submittal of a Notice of Intent or Abbreviated Notice of Intent) has been received from the issuing authority (i.e., Conservation Commission or the Department of Environmental Protection).

☐ 1. The area described on the referenced plan(s) is an area subject to protection under the Act. Removing, filling, dredging, or altering of the area requires the filing of a Notice of Intent.

☐ 2a. The boundary delineations of the following resource areas described on the referenced plan(s) are confirmed as accurate. Therefore, the resource area boundaries confirmed in this Determination are binding as to all decisions rendered pursuant to the Wetlands Protection Act and its regulations regarding such boundaries for as long as this Determination is valid.

_____
_____
_____
_____

☐ 2b. The boundaries of resource areas listed below are not confirmed by this Determination, regardless of whether such boundaries are contained on the plans attached to this Determination or to the Request for Determination.

_____
_____
_____
_____

☐ 3. The work described on referenced plan(s) and document(s) is within an area subject to protection under the Act and will remove, fill, dredge, or alter that area. Therefore, said work requires the filing of a Notice of Intent.

☐ 4. The work described on referenced plan(s) and document(s) is within the Buffer Zone and will alter an Area subject to protection under the Act. Therefore, said work requires the filing of a Notice of Intent.

☐ 5. The area and/or work described on referenced plan(s) and document(s) is subject to review and approval by:

_____
Name of Municipality

Pursuant to the following municipal wetland ordinance or bylaw:

_____
Name                                                    Ordinance or Bylaw Citation



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
# WPA Form 2 — Determination of Applicability
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

## B. Determination (cont.)

☐ 6. The following area and/or work, if any, is subject to a municipal ordinance or bylaw but <u>not</u> subject to the Massachusetts Wetlands Protection Act:

_____

_____

☐ 7. If a Notice of Intent is filed for the work in the Riverfront Area described on referenced plan(s) and document(s), which includes all or part of the work described in the Request, the applicant must consider the following alternatives. (Refer to the wetland regulations at 10.58(4)c. for more information about the scope of alternatives requirements):

  ☐ Alternatives limited to the lot on which the project is located.

  ☐ Alternatives limited to the lot on which the project is located, the subdivided lots, and any adjacent lots formerly or presently owned by the same owner.

  ☐ Alternatives limited to the original parcel on which the project is located, the subdivided parcels, any adjacent parcels, and any other land which can reasonably be obtained within the municipality.

  ☐ Alternatives extend to any sites which can reasonably be obtained within the appropriate region of the state.

**Negative Determination**
Note: No further action under the Wetlands Protection Act is required by the applicant. However, if the Department is requested to issue a Superseding Determination of Applicability, work may not proceed on this project unless the Department fails to act on such request within 35 days of the date the request is post-marked for certified mail or hand delivered to the Department. Work may then proceed at the owner's risk only upon notice to the Department and to the Conservation Commission. Requirements for requests for Superseding Determinations are listed at the end of this document.

☐ 1. The area described in the Request is not an area subject to protection under the Act or the Buffer Zone.

☐ 2. The work described in the Request is within an area subject to protection under the Act, but will not remove, fill, dredge, or alter that area. Therefore, said work does not require the filing of a Notice of Intent.

☒ 3. The work described in the Request is within the Buffer Zone, as defined in the regulations, but will not alter an Area subject to protection under the Act. Therefore, said work does not require the filing of a Notice of Intent, subject to the following conditions (if any).

The house and garage must be set back a minimum of 40 feet from the City Flood Control. Erosion control measures must be taken along the flood control by using haybales, stakes and a silt fence prior to construction.

☐ 4. The work described in the Request is not within an Area subject to protection under the Act (including the Buffer Zone). Therefore, said work does not require the filing of a Notice of Intent, unless and until said work alters an Area subject to protection under the Act.